**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTIAN LEGAL SOCIETY
CHAPTER OF UNIVERSITY OF
CALIFORNIA, HASTINGS
COLLEGE OF THE LAW, aka Hastings
Christian Fellowship,
        *Plaintiff-Appellant,*

        v.

FRANK H. WU,* in his official
capacity as Chancellor and Dean
of University of California,
Hastings College of the Law; et
al.,
        *Defendants-Appellees,*

HASTINGS OUTLAW,
        *Defendant-intervenor-Appellee.*

No. 06-15956

D.C. No.
CV-04-04484-JSW

ORDER

On Remand from the United States Supreme Court

Filed November 17, 2010

Before: Alex Kozinski, Chief Judge, Procter Hug, Jr. and
Carlos T. Bea, Circuit Judges.

---

*Frank H. Wu replaced Leo P. Martinez as Hastings' chancellor and
dean.

18561

## COUNSEL

Michael W. McConnell, Stanford, California, Kimberlee Wood Colby, Center for Law & Religious Freedom, Springfield, Virginia, and Timothy M. Smith, McKinley & Smith, PC, Sacramento, California, for the appellant.

Elise K. Traynum, General Counsel and Secretary, University of California Hastings College of the Law, San Francisco, California, and Ethan P. Schulman, Crowell & Moring LLP, San Francisco, California, for the appellees.

Shannon P. Minter and Christopher F. Stoll, National Center for Lesbian Rights, San Francisco, California, and Paul M. Smith and Duane C. Pozza, Jenner & Block LLP, Washington, D.C., for the defendant-intervenor-appellee.

## ORDER

Our disposition in this case was affirmed by the Supreme Court. *Christian Legal Soc'y* v. *Martinez*, 130 S. Ct. 2971, 2995 (2010). On remand, Christian Legal Society ("CLS") asks us to remand with instructions that the district court consider its claim that Hastings College of Law selectively applies its Nondiscrimination Policy against CLS. Before the Supreme Court, CLS contended that "[t]he peculiarity, incoherence, and suspect history of the all-comers policy all point to pretext." *Id.* (internal quotation marks omitted) (alteration in original). The majority refused to address this argument, however, because "[n]either the District Court nor the Ninth Circuit addressed an argument that Hastings selectively enforces its all-comers policy, and this Court is not the proper forum to air the issue in the first instance." *Id.* The Court then remanded with instructions for us to consider the pretext issue "if, and to the extent, it is preserved." *Id.* True to the Court's instruction, we consider whether, and to what extent, CLS preserved the issue of selective enforcement.

At the outset, it's important to distinguish the two related discrimination arguments that CLS has attempted to make. First, CLS has argued that the school's Nondiscrimination Policy is unconstitutional because it prohibits discrimination on certain bases, including religion, but not others. Thus, even neutrally applied, the policy leaves groups like Hastings Democratic Caucus free to limit membership to those who agree with its core beliefs (which involve political issues), while CLS (whose core beliefs are religious) cannot. We call this the "uneven effect" argument. Second, CLS has argued that in practice Hastings selectively applies its policy against CLS because of its particular beliefs. Mot. To Remand at 4. We call this the "selective application" or "pretext" argument. The distinction between these arguments is critical, because the Supreme Court remanded only the pretext claim. *Compare Christian Legal Soc'y*, 130 S. Ct. at 2982-84 (rejecting the uneven effect argument), *with id.* at 2995 (remanding the selective application argument).

"We review only issues [that] are argued specifically and distinctly in a party's opening brief." *Brownfield* v. *City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). Within the opening brief, claims must be clearly articulated in (1) "a statement of the issues presented for review"; (2) "a summary of the argument"; and (3) "the argument" section itself. Fed. R. App. P. 28. Compliance with the rules is not a mere formality, as we've repeatedly held that "failure to comply with Rule 28, by itself, is sufficient ground to justify dismissal of an appeal." *See, e.g.*, *In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir. 2002) (order). CLS's opening brief made no pretext argument, much less at each required juncture.

CLS presented only one issue for review: "Whether the Constitution permits a public law school to deny a religious student group numerous valuable benefits because the group requires its officers and voting members to agree with its religious viewpoint." Opening Br. at 2. This statement of the issue does not fairly encompass a selective application argu-

ment; it in no way suggests that Hastings applied its policy as a pretext for discrimination, or that it applied the policy to certain groups but not to others. This failure alone would warrant our dismissal of its motion for further proceedings on the ground that the pretext issue was not preserved. *Cf. Belanger* v. *Madera Unified Sch. Dist.*, 963 F.2d 248, 250 n.1 (9th Cir. 1992) (refusing to address argument appellant "fail[ed] to raise . . . in her statement of issues presented for review").

CLS's summary of argument also fails to raise the selective application argument. Our rules require "a succinct, clear, and accurate statement of the arguments made in the body of the brief." Fed. R. App. P. 28(a)(8). Although CLS filled three pages carefully articulating its claims under the Free Speech Clause, the Free Exercise Clause and the Equal Protection Clause, it made no allegation of "pretext," "selective application" or "discriminatory intent." *See* Opening Br. at 16-19. Thus, far from the "succinct, clear, and accurate statement of the arguments" we require, CLS failed even to allude to a pretext argument.

The selective application argument makes no appearance in the body of CLS's brief. CLS claims that it has "preserved the issue by consistently arguing in this Court . . . that Appellees' all-comers policy is pretextual and has been selectively enforced," but it points only to isolated statements, which, in context, were made only to support its uneven effect argument. Mot. To Remand at 3.

For example, CLS points to its statement that "Hastings allows other registered student organizations to require that their leaders and/or members agree with the organization's beliefs and purposes." Mot. To Remand at 5 (quoting Opening Br. at 14-15). This statement might be true, and might even be relevant to a selective application argument, but a bare assertion in the fact section of the opening brief will not preserve a legal argument that is never made. Why would CLS have included this fact if it wasn't making a pretext

argument? Because the statement equally supports the uneven effect argument that CLS clearly did raise: Even neutrally applying the Nondiscrimination Policy, Hastings allows groups to discriminate on some bases, like political belief, but not others, such as religion. *See* Opening Br. at 63. CLS plucks this fact out of context to suggest it was making a pretext argument, when it clearly only made an uneven effect argument in its brief.

CLS also points to its assertion that "Hastings' actual practice demonstrates that the forum is not reserved to student organizations that do not discriminate on the basis of belief." Mot. To Remand at 5 (quoting Opening Br. at 54-55). But this statement was part of a broader free speech argument, which was ultimately rejected by the Supreme Court. *See Christian Legal Soc'y*, 130 S. Ct. at 2994-95. CLS argued that "because CLS falls within the parameters of Hastings' forum, Hastings' exclusion of the group is subject to strict scrutiny." Opening Br. at 53. This is completely unrelated to an argument that the policy was unconstitutional because Hastings used it to target religious groups. And, again, the statement that the forum is open to some groups that discriminate based on beliefs but not others would equally support the uneven effect theory. CLS offers no reason to read the statement as a pretext argument, as it never asserted that Hastings had a discriminatory purpose to exclude religious groups. Instead, it stipulated that Hastings applies its Nondiscrimination Policy to all student organizations:

> Hastings requires that registered student organizations allow any student to participate, become a member, or seek leadership positions in the organization, regardless of their [sic] status or beliefs. *See* Kane Depo. at 49; Chapman Depo. at 29-31. Thus, for example, the Hastings Democratic Caucus cannot bar students holding Republican political beliefs from becoming members or seeking leadership positions in the organization. *See* Kane Depo. at 50.

Joint Stip. of Facts at 7. The fact that some statements made to support the uneven effect argument could also have been used to support a selective application argument is not enough to preserve the latter argument, especially as it contradicts the written stipulation.[1]

CLS's conflation of these two distinct issues is clearest when it asserts that "CLS devoted an entire section of its appellate brief to the argument that Hastings 'treats similarly situated student organizations differently.' " Reply to Opp'n at 5 (citing Opening Br. at 63). But the section CLS refers to —its equal protection section—focused only on the uneven effect of the Nondiscrimination Policy as uniformly applied. Here is CLS's entire argument on this point:

> V.   Hastings Has Violated Equal Protection Because It Treats Similarly Situated Student Organizations Differently.
>
> The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As noted above, Hastings treats similarly situated student groups differently. Political groups, like Hastings Democratic Caucus, may require members to adhere to the purpose of the group. ER at 296. Cultural groups, like the Vietnamese American Law Society, may insist that members respect the organization's objectives. ER at 282. But a religious student group may not have religious qualifications for their officers and members.
>
> Evidence of discriminatory intent is presumed when the exclusion affects a fundamental right.

---

[1]Indeed, the Supreme Court rejected the uneven effect argument on precisely this ground. *See Christian Legal Soc'y*, 130 S. Ct. at 2982.

> *Plyler* v. *Doe*, 457 U.S. 202, 216-17 (1982). Hastings' actions affect the fundamental rights of association, speech, and free exercise. Because the distinction drawn here affects a fundamental right, it is subject to strict scrutiny. *Clark* v. *Jeter*, 486 U.S. 456 (1988).

Opening Br. at 63-64.[2] CLS never argued that Hastings selectively enforced its Nondiscrimination Policy, that it singled out CLS for discriminatory treatment or (as it argued before the Supreme Court) that the school's "sudden adoption" of its policy after CLS tried to register was proof that the policy is a pretext for discrimination.

As previously noted, we won't "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller* v. *Fairchild Indust., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). Applying this standard, we've refused to address claims that were only "argue[d] in passing," *Brownfield*, 612 F.3d at 1149 n.4, or that were "bare assertion[s] . . . with no supporting argument," *Navajo Nation* v. *U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008). CLS's brief didn't even do that much; CLS's hindsight attempt to string together an argument from quotes scattered throughout its opening brief confirms that it made no pretext argument at all, much less "specifically and distinctly." "Judges are not like

---

[2]The citations to the record refer to the student group constitutions of Hastings Democratic Caucus ("HDC") and the Vietnamese American Law Society ("VALS"). Both constitutions state that "any full-time student at Hastings may become a member of [the group] so long as they [sic] do not exhibit a consistent disregard and lack of respect for the organization" whose purpose it is to "advance Democratic Party principles," in the case of HDC, and to "celebrate Vietnamese culture," in the case of VALS. The existence of these bylaws doesn't show that the organizations are actually excluding members based on beliefs. CLS stipulated that it does not. *See* page 18565 *supra*. This is consistent with the fact that the constitutions of both HDC and VALS specifically require that their respective "[m]embership rules shall not violate the Nondiscrimination Compliance Code of Hastings."

pigs, hunting for truffles buried in briefs." *Greenwood* v. *FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) (alteration omitted). But even after assiduously digging through CLS's opening brief, and carefully reviewing the passages CLS claims contain its pretext argument, we've found nothing reasonably supporting its existence.

If omission of the pretext argument from the opening brief weren't sufficient to convince us that the issue has not been preserved, *but see Miller*, 797 F.2d at 738, a review of oral argument crystalizes our conclusion. In our first breath, we asked counsel to distinguish *Truth* v. *Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008), a case in which a student group complained that the school's Nondiscrimination Policy had an unconstitutional effect on religion. Counsel didn't distinguish *Truth* on what would be the most obvious ground that Hastings applies its Nondiscrimination Policy as a pretext for discrimination. Instead counsel responded only that:

> First and foremost, *Truth* v. *Kent* was limited to general membership, which was the equivalent of attendees . . . . I think the other distinction, your Honor, from *Truth* is that [the student group] was seeking to be school sponsored.

Oral Argument at 0:19, *available at* http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000002982. Neither distinction points to pretext. Though the entire argument focused on whether *Truth* controlled, CLS never tried to distinguish its case by claiming that Hastings selectively applied its policy, while the school in *Truth* uniformly applied a policy that had an impermissible effect on religion. CLS never claimed that Hastings' policy was selectively enforced, nor did it ask us to remand for further discovery on the pretext issue.

Judges sometimes overlook issues fairly presented by the parties, *see Murdoch* v. *Castro*, 609 F.3d 983, 999-1000 (9th

Cir. 2010) (en banc) (Kozinski, C.J., dissenting), but that's not what happened here. CLS simply failed to raise this issue the first time around, and it is not entitled to "a second bite at the appellate apple." *Kesselring* v. *F/T Arctic Hero*, 95 F.3d 23, 24 (9th Cir. 1996) (per curiam). If, going forward, Hastings applies its policy in a discriminatory way, CLS may be able to file a new lawsuit. But in the current case, the Supreme Court gave very specific instructions to consider the pretext argument only "if, and to the extent, it is preserved." *Christian Legal Soc'y*, 130 S. Ct. at 2995. Having determined that CLS has not preserved this argument, we have no authority to consider it now. *See id.*; *see also Briggs* v. *Pa. R.R.*, 334 U.S. 304, 306 (1948).

**DENIED.**