O’SCANNLAIN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the court’s vacatur of the sentence and restitution order and in its remand for resentencing. I respectfully dissent from the court’s decision to limit the evidence that the district court may consider on remand to that which is in the existing record.
I
A
“The default rule is that ‘if a district court errs in sentencing, we will remand for resentencing on an open record — that is, without limitation on the evidence that the district court may consider.’ ” United States v. Flores, 725 F.3d 1028, 1043 (9th Cir. 2013) (quoting United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir. 2002) (en banc)). “We may depart from this general rule where additional evidence would not have changed the outcome or where there was a failure of proof after a full inquiry into the factual question at issue.” Id. (emphasis added) (internal quotation marks omitted). Because departure from the default rule is permissive, not mandatory, I would require the party seeking a closed remand to explain why we should depart from our default rule.
Pridgette did not address this issue at all in his opening brief. “We review only issues that are argued specifically and distinctly in a party’s opening brief.” Christian Legal Soc’y v. Wu, 626 F.3d 483, 485 (9th Cir. 2010) (alteration omitted) (quoting Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010)); see also id. at 487 (“[W]e won’t ‘consider matters on appeal that are not specifically and distinctly argued in appellant’s opening brief.’ ” (quoting Miller v. Fairchild Indust., Inc., 797 F.2d 727, 738 (9th Cir. 1986))).
“We adhere to this approach for sound prudential reasons.” Loher v. Thomas, No. 14-16147, 825 F.3d 1103 (9th Cir. June 17, 2016) (quoting Ground Zero Ctr. for NonViolent Action v. U.S. Dep’t of Navy, 383 F.3d 1082, 1091 n.7 (9th Cir. 2004)). “The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” Id. (quoting NASA v. Nelson, 562 U.S. 134, 148 n.10, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011)); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (“Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.”); Abovian v. INS, 219 F.3d 972, 981 (9th Cir. 2000) (Wallace, J., dissenting) (“There is a risk that the court, lacking the analysis ordinarily provided by adversarial parties, will reach the wrong conclusion on the merits and create poor precedent .... ”).
Because Pridgette did not argue anywhere in his opening brief that we should order a closed remand, he waived this issue.[1] The majority does not appear to *1260 dispute this conclusion. Given Pridgette’s waiver, we should have declined to address this issue and applied our default rule of remanding for resentencing on' an open record.
B
After failing to raise this issue in his opening brief, Pridgette did not mention this issue in his reply brief or at oral argument.[2] Pridgette did not even object when, after argument, the government confessed error but requested an open remand. Having failed to argue for a closed remand in his opening brief, in his reply brief, at oral argument, or in a response to the government’s letter confessing error, Pridgette was granted a fifth chance to make his request when the panel sua sponte ordered him to address this issue in supplemental briefing.[3] I see no need for such solicitude.
Furthermore, I do not see why we should forgive Pridgette’s failure to argue this issue in his opening brief but punish the government’s failure to develop the record below.[4] If we gave Pridgette a fifth chance to argue for a closed remand, should we not also give the government a second chance to meet its burden of proof?[5]
II
Even assuming that we should excuse Pridgette’s waiver, Pridgette’s supplemental brief does not persuasively explain why we should depart from our default rule of an open remand.
Pridgette does not expressly delineate the exceptions to the default rule and fails to address squarely why any of those exceptions should apply in this case. Given Pridgette’s citations, he seems to argue for *1261 the exception based on “failure of proof after a full inquiry into the factual question at issue.” See Matthews, 278 F.3d at 886. But Pridgette neither explains what constitutes a “full inquiry,” nor explains why there was a full inquiry, nor even states that there was a full inquiry. He merely argues that the government had the opportunity to meet its burden of proof and does not deserve a second chance to do so now. Seeing no adequate explanation in the briefing from Pridgette of why the exceptions to our default rule should apply in this case, I would remand for resentencing on an open record.
Undaunted by the lack of any convincing argument from Pridgette at any stage, the majority, confident as a “self-directed board[] of legal inquiry and research,” manufactures arguments for Pridgette. But see NASA, 562 U.S. at 148 n.10, 131 S.Ct. 746; Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994) (“We will not manufacture arguments for an appellant....”). Moreover, it reaches out unnecessarily to establish a prophylactic rule for our circuit because “justice so requires.” Maj. Op. at 1258. Rather than adjudicate the dispute that the parties presented to us, the majority decides that, in this case, we must craft a rule to “help prevent” future errors by punishing the government. Maj. Op. at 1258. If we are so eager to set broad rules for the circuit, why did we limit the parties to 1500-word supplemental briefs, drafted over two weeks, without the opportunity for responses, and without oral argument? Instead, we should have left this question to the next case and to parties who care enough about this issue to brief it without being ordered to do so.
Ill
Reviewing the record, I remain unconvinced by the majority’s argument that there was a “full inquiry” into the duration of Pridgette’s prior sentences. After Prid-gette objected to the initial pre-sentence investigation report and the government responded, Pridgette augmented Ms objections in his sentencing memorandum and then referenced his written objections in passing at the sentencing hearing. The government did not file any written response to the sentencing memorandum and did not respond orally to Pridgette’s passing reference to the issue at the hearing.[6]
At the hearing, the district court did not explore this issue. It offered no explanation for its decision other than its conclusion that the probation officer had sufficiently addressed the objections in his Addendum. I do not think that this minimal amount of consideration by the court constitutes a “full inquiry” into the factual question at issue. Indeed, a “full inquiry” necessarily requires a modicum of “inquiry.” While perhaps the government is partly responsible for the lack of a full *1262 inquiry, that does not change the fact that there was no such inquiry.
The majority’s prophylactic rule does not require any “inquiry” as part of a “full inquiry” into the factual question at issue. According to the majority, a full inquiry occurs when the government has a “fair opportunity” to present evidence and “squarely raises its arguments before the district court.” Maj. Op. at 1257. In other words, the district court need not inquire into the factual question at issue so long as the government has had a chance to address such question.
While this might be a good rule to encourage the government “to present a complete record supporting its desired sentence,” Maj. Op. at 1258, I am not convinced that we must establish prophylactic rules for the Department of Justice at the expense of a fully informed determination of the appropriate sentence for defendants. Like the exclusionary rule in the Fourth Amendment context, the majority’s prophylactic rule will “generate[ ] substantial social costs,” including setting shorter sentences for dangerous convicted felons on the basis of incomplete evidence. See Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (internal quotation marks omitted). Given the rule’s “costly toll upon truth-seeking and law enforcement objectives,” we should be more cautious in establishing and applying it. See id. (internal quotation marks omitted); see also id. (“Suppression of evidence ... has always been our last resold, not our first impulse.”).
“The process of criminal sentencing is not a game between the government and criminal defendants, in which one side or the other gets penalized for unskillful play. The goal of sentencing is to determine the most appropriate sentence in light of the characteristics of the crime and the defendant.” United States v. Matthews, 240 F.3d 806, 823 (9th Cir. 2000) (O’Scannlain, J., dissenting), on reh’g en banc, 278 F.3d 880 (9th Cir. 2002). Unfortunately, the majority loses sight of these principles and seeks to penalize the government to satisfy its own conception of justice.
I respectfully dissent.

. Christian Legal Society explained that, "[wjithin the opening brief, claims must be clearly articulated in (1) 'a statement of the issues presented for review’; (2) 'a summary of the argument’; and (3) ‘the argument’ section itself.” 626 F.3d at 485 (quoting Fed. R. App. P. 28). In addition, an appellant’s brief *1260 must include a conclusion "stating the precise relief sought." Fed. R. App. P. 28(a)(9). Prid-gette did not include a request for a closed remand in any of these four portions of his opening brief.

. Pridgette certainly should have been aware of this issue by the time of oral argument because we ordered the parties to be prepared to discuss Flores, which addresses the scope of the remand at some length. See Flores, 725 F.3d at 1043.

. The majority distorts our General Orders when it asserts that, “[w]hen a panel is confronted with an important issue that was not fully addressed in the briefing, our General Orders advise that the panel should order supplemental briefing on that issue.” Maj. Op. at 1258. This turns General Order 4.2 on its head. In reality, that rule provides: "If a panel determines to decide a case upon the basis of a significant point not raised by the parties in their briefs, it shall give serious consideration to requesting additional briefing and oral argument before issuing a disposition predicated upon the particular point.” This is not a general license for judges to disregard the waiver of issues by ordering supplemental briefing. Rather, General Order 4.2 is a reminder that we should not decide a case on the basis of a point that the parties have not briefed. So, yes, supplemental briefing was appropriate in this case, but only as an alternative to deciding these issues without any briefing from the parties. We should have followed the parties’ lead and simply declined to address this issue.

. Judge Kozinski has argued elsewhere that we should not treat parties disparately when they have both defaulted. See Alvarez v. Tracy, 773 F.3d 1011, 1024 (9th Cir. 2014) (Kozinski, J., dissenting).

. The majority concludes that the government itself waived the waiver issue by not addressing it in its supplemental brief. We ordered the parties to address "whether this case should be remanded for resentencing on an open record or on the existing record” and cited Matthews, so the government reasonably could have read our order not to permit an argument that Pridgette waived a request for a closed record. Even if the government did forfeit such an argument, we used supplemental briefing to cure Pridgette’s waiver; why not order another round of supplemental briefing to cure the government’s waiver?

. The majority asserts that Pridgette "objected for a third time at sentencing." Maj. Op. at 1255. It conveys the impression that Pridgette actually argued about this point at the sentencing hearing. He did not. His counsel simply referenced his prior briefing: "I will stand on my previous briefing about why I think the criminal history level is actually no higher than five and that the offense level is no higher than 20.” Similarly, a reader of the majority’s opinion would be forgiven for thinking that the district judge was discussing the appropriate criminal history category when he said that he ”ha[d] spent a lot of time thinking about this case.” Maj. Op. at 1258 He was not. In context, it is clear that the district judge was talking about the case generally. Finally, the majority asserts that the government “pressed its view that the criminal-history category had been properly calculated” and "admitted that] the inquiry into Pridgette’s criminal history was thorough.” Maj. Op. at 1258. It did not. All it said about the criminal history category was: "I believe that Criminal History Category VI was also correctly calculated.”