NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-16-1173-KuLJu |
| CM REED ALMEDA 1-3062, LLC, | Bk. No.   2:13-bk-19117 |
| Debtor. | |
| CM REED ALMEDA 1-3062, LLC, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| HARRIS COUNTY, | |
| Appellee. | |

Submitted Without Oral Argument
on February 24, 2017

Filed – April 26, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gary A. Spraker, Bankruptcy Judge, Presiding

Appearances:    Gerald M. Gordon and Mark M. Weisenmiller of Garman Turner Gordon LLP and Douglas S. Draper of Heller, Draper, Patrick, Horn & Dabney, L.L.C. on brief for appellant CM Reed Almeda 1-3062, LLC; Jeanette E. McPherson of Schwartzer & McPherson Law Firm and John P. Dillman of Linebarger Goggan Blair & Sampson, LLP on brief for appellee Harris County.

Before: KURTZ, LAFFERTY and JURY, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Chapter 11[1] debtor CM Reed Almeda 1-3062, LLC appeals from an order denying its motion under § 505 to determine its ad valorem property tax liability. With respect to property taxes assessed between 2007 and 2009, the bankruptcy court held that CM Reed Almeda lacked standing because it did not own the property at the time the taxes were assessed. As for all property taxes assessed in 2014 and before, the bankruptcy court held that § 505 barred it from determining CM Reed Almeda's tax liability because the time to challenge those taxes had expired under applicable nonbankruptcy law before CM Reed Almeda filed its motion. Finally, concerning 2015 and 2016 taxes, the bankruptcy court ruled that it would exercise its discretion to abstain.

We agree with the bankruptcy court's determination that CM Reed Almeda's request for a determination of its tax liability for 2014, and all years prior, was time barred. In addition, we hold that the bankruptcy court did not abuse its discretion in abstaining from hearing and deciding the dispute over 2015 and 2016 taxes.

Therefore, we AFFIRM.

**FACTS**

CM Reed Almeda has not challenged the bankruptcy court's recitation of the basic underlying facts set forth in the court's

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

memorandum of decision entered on May 31, 2016, so we have relied on that recitation.

CM Reed Almeda filed its chapter 11 petition in 2013. Its sole asset is roughly 16 acres of vacant land in Harris County, Texas. The land formerly was used for oil and gas exploration, but more recently it was platted for residential development. The land's former use resulted in environmental issues. Additionally, numerous property transfers, encumbrances and foreclosures clouded title. In 2011, Larry Ramming and Dick Wheeler purportedly acquired the land via a foreclosure. Thereafter, many tax notices were sent to Ramming and Wheeler as the owners of record.

At the time of its 2013 bankruptcy filing, CM Reed Almeda claimed ownership of the land. According to CM Reed Almeda, it filed bankruptcy in order to take advantage of the Bankruptcy Code provision enabling debtors to sell assets free and clear of liens and other interests. CM Reed Almeda expected to clear title to the land, through a bankruptcy sale.

Another issue CM Reed Almeda sought to address in the bankruptcy case was its disputed tax liability to Harris County. Harris County filed two proof of claims asserting secured and priority tax claims.[2] The first proof of claim was for prepetition ad valorem real property taxes arising between 2007

---

[2]Actually, the tax claims asserted by Harris County were an aggregation of tax liability owed to a variety of city and county taxing authorities. For ease of reference and because the identity of the specific taxing authorities is not relevant to our analysis or the resolution of this appeal, we collectively refer to these taxing authorities as Harris County.

3

and 2013 in the aggregate amount of $556,275.07. Harris County submitted over 400 pages of supporting documentation, consisting of partial tax statements issued by the Harris County Tax Assessor-Collector. The tax statements showed that the taxing entities had assessed taxes against each subdivided lot rather than against the land as a whole, and most of the statements identified Wheeler and Ramming as the "certified owners" of the land. None of them identified CM Reed Almeda as certified owner, nor is there any indication in the proof of claim or the supporting documentation as to whether or when CM Reed Almeda received notice of the tax assessments.

Harris County's second proof of claim was for postpetition ad valorem real property taxes arising in 2014 and 2015 in the aggregate amount of $111,492.52. The partial tax statements submitted in support of Harris County's amended postpetition claim are similar to those submitted in support of Harris County's prepetition claim, inasmuch as they identify Wheeler and Ramming as the "certified owners" of the property and none of them identify CM Reed Almeda as the certified owner.

To challenge Harris County's tax claims, CM Reed Almeda filed a motion under § 505 asserting that taxes were improperly assessed against its land and that it did not receive notice of the taxes assessed. Harris County opposed the motion. Harris County argued in relevant part that CM Reed Almeda lacked standing to challenge the taxes imposed for 2007 through 2009 because CM Reed Almeda did not own the land at the time. Harris County also argued that the time period for disputing the tax liability had expired and alternately argued that the bankruptcy

4

court should abstain from hearing the tax dispute.

After holding a hearing on CM Reed Almeda's motion, the bankruptcy court issued a memorandum decision, which held in part that the court lacked authority under § 505(a) to determine CM Reed Almeda's tax liability and abstained in part from resolving the dispute. For taxes incurred between 2007 and 2009, the bankruptcy court reasoned that CM Reed Almeda lacked standing under Texas law to challenge those taxes because CM Reed Almeda did not own the land at the time the taxes were incurred.

For taxes incurred between 2010 and 2014, the bankruptcy court ruled that CM Reed Almeda's challenge was untimely. The court pointed out that § 505(a)(2)(C) prohibits the bankruptcy court from considering the debtor's challenge to ad valorem property taxes if the applicable period under nonbankruptcy law for challenging the taxes had expired.[3] The court interpreted state tax law in concluding that CM Reed Almeda was time barred both from directly challenging the taxes assessed and from complaining that it did not receive notice of the taxes assessed.

For taxes incurred in 2015 and 2016, the bankruptcy court concluded that it would abstain. The court set forth two alternate abstention tests for resolving discretionary abstention

[3]The bankruptcy court further ruled that the critical date for purposes of determining timeliness was the date CM Reed Almeda filed its § 505 motion and that § 108(a) did not apply to extend any state-law-imposed deadlines for disputing ad valorem property tax liability. CM Reed Almeda has not challenged these rulings on appeal, so we decline to discuss them further. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010) (declining to address matters not specifically and distinctly discussed in the appellant's opening brief); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same).

issues: one that has been used outside the Ninth Circuit specifically to resolve the question of whether the bankruptcy court should exercise its discretion under § 505 to determine the debtor's tax liability and another that is the prevailing Ninth Circuit test used to resolve discretionary abstention questions arising under 28 U.S.C. § 1334(c)(1). Under either test, the court determined discretionary abstention was appropriate.[4]

The bankruptcy court entered its order denying CM Reed Almeda's § 505 motion on May 31, 2016, and CM Reed Almeda timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (O), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Was CM Reed Almeda's § 505 motion untimely?
2. Did the bankruptcy court abuse its discretion in deciding to abstain from determining CM Reed Almeda's tax liability for 2015 and 2016?

## STANDARDS OF REVIEW

The bankruptcy court's determination that CM Reed Almeda's § 505 motion should be denied as untimely turned on its interpretation and application of the Bankruptcy Code and Texas law. We review these matters de novo. Rund v. Bank of Am. Corp.

---

[4]The bankruptcy court further stated that, to the extent its rulings regarding the taxes incurred between 2007 and 2014 turned out to be incorrect, its abstention ruling would apply to those taxes as well.

6

(In re EPD Inv. Co., LLC), 523 B.R. 680, 684 (9th Cir. BAP 2015).

The bankruptcy court's permissive abstention ruling is reviewed for an abuse of discretion. In re Bankr. Petition Preparers who are not Certified Pursuant to Requirements of Ariz. Sup. Ct., 307 B.R. 134, 140 (9th Cir. BAP 2004). A bankruptcy court abuses its discretion if it fails to identify or apply the correct legal rule or its application of the correct legal rule was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Yellow Express, LLC v. Dingley (In re Dingley), 514 B.R. 591, 596 (9th Cir. BAP 2014) (citing United States v. Hinkson, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc)).

Similarly, findings of fact made in the course of the court exercising its discretion are reviewed under the clearly erroneous standard and are not clearly erroneous unless they were illogical, implausible or without support in the record. Hinkson, 585 F.3d at 1261-62 & n.21.

## DISCUSSION

### A. Timeliness Issue

The Bankruptcy Code authorizes the bankruptcy court to determine the debtor's liability for taxes unless they were adjudicated prepetition "by a judicial or administrative tribunal of competent jurisdiction." § 505(a)(1), (a)(2). With respect to ad valorem property taxes, the Code restricts the bankruptcy court's authority by prohibiting the court from determining the debtor's tax liability when the period "under applicable nonbankruptcy law" for challenging the amount of taxes has expired. § 505(a)(2)(C).

7

In turn, Texas law generally permits property owners to protest ad valorem property tax assessments until the later of June 1 of the tax year in question or until 30 days after the date notice was delivered to the property owner, whichever is later. Texas Tax Code § 41.44(a)(2). More importantly for this appeal, a tax protest based on a failure to receive proper notice must be filed no later than the date the taxes become delinquent. Texas Tax Code § 41.44(c); see also Heritage Operating, L.P. v. Barbers Hill Indep. Sch. Dist., 496 S.W.3d 318, 325 (Tex. Ct. App. 2016) ("A property owner is not entitled to have the lack-of-notice protest heard and determined unless, before the taxes become delinquent, the property owner files the notice of protest . . . ."). While taxes generally become delinquent on February 1 of the year following the year in which the taxes were imposed, Texas Tax Code § 31.02(a), there is a special, extended delinquency date for purposes of a notice-based tax protest:

> . . . a property owner who files a [notice-based] protest under Section 41.411 on or after the date the taxes on the property to which the notice applies become delinquent, but not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question, is entitled to a hearing solely on the issue of whether one or more taxing units timely delivered a tax bill. If at the hearing the appraisal review board determines that all of the taxing units failed to timely deliver a tax bill, **the board shall determine the date on which at least one taxing unit first delivered written notice of the taxes in question, and for the purposes of this section the delinquency date is postponed to the 125th day after that date.**

Texas Tax Code § 41.44(c-3) (emphasis added).

The bankruptcy court, here, effectively determined that,

8

pursuant to § 505(a)(2)(C), it lacked authority to determine CM Reed Almeda's liability to Harris County for tax years 2007 through 2014 because CM Reed Almeda did not timely challenge these tax assessments and did not timely complain of the absence of written notice of these taxes.[5] In relevant part, the bankruptcy court explained that Texas Tax Code § 41.411 is the exclusive remedy for contesting the notice given of tax assessments and that, under Texas Tax Code § 41.44(c-3), Harris County's proofs of claim had been sufficient notice of the taxes to cause the 125-day extension period to begin to run. Because CM Reed Almeda's § 505 motion was not filed within 125 days of the filing of Harris County's proofs of claim, the § 505 motion was time-barred for the 2014 tax year and for all tax years prior

[5]For the tax years 2007, 2008 and 2009, the bankruptcy court actually ruled that CM Reed Almeda lacked standing to dispute these taxes because it did not own the land at the time the taxes were imposed. Citing Houston Land & Cattle Co. v. Harris Cnty. Appraisal Dist., 104 S.W.3d 622, 625 & n.2 (Tex. Ct. App. 2003), the bankruptcy court held that only the owner of the property at the time the assessment was made has standing to contest either that assessment or an alleged lack of notice of that assessment. Read as a whole, Houston Land & Cattle Co. arguably might be better interpreted as a forfeiture case rather than a standing case. That is to say, because the prior owners had forfeited any rights to contest the appraisals or lack of notice thereof, the prior owners had no surviving challenge rights that they could have passed to a successor owner. Id. at 623-25.

In any event, CM Reed Almeda has not challenged the bankruptcy court's "standing" holding on appeal. Moreover, even if CM Reed Almeda had challenged this holding, it would be unnecessary for us to review it because the bankruptcy court's timeliness ruling adequately supports its denial of the § 505 motion for the 2007, 2008 and 2009 tax years. We can affirm on any ground supported by the record. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

9

to 2014.

On appeal, CM Reed Almeda has not disputed that, before it filed its § 505 motion, the time had expired directly to challenge the 2007 through 2014 tax assessments. Nor has CM Reed Almeda challenged on appeal the bankruptcy court's determination that Texas Tax Code § 41.411 is the exclusive remedy available to contest notice of taxes assessed. See Heritage Operating, L.P., 496 S.W.3d at 323 (citing Texas Tax Code § 42.09 and stating "[a]ny ground of protest that the Code authorizes can be adjudicated only by the procedures it prescribes"); Houston Land & Cattle Co., 104 S.W.3d at 624 (citing Texas Tax Code § 42.09 and stating "[t]he Tax Code provides the exclusive remedy for adjudication of property tax protests."). Nor has CM Reed Almeda argued that its alleged failure to receive notice: (1) affected the validity of the tax assessments or the underlying appraisals, or (2) absolved it of an affirmative duty to contest the tax assessments or the underlying appraisals. See Denton Cent. Appraisal v. CIT Leasing, 115 S.W.3d 261, 265-66 (Tex. Ct. App. 2003); see also Texas Tax Code § 25.19(d).

CM Reed Almeda specifically and distinctly argues only one timeliness issue in its appeal brief – that the bankruptcy court erred when it held that Harris County's proofs of claim constituted sufficient notice of the taxes assessed to trigger the 125-day extension period under Texas Tax Code § 41.44(c-3). Without citing any authority in support, CM Reed Almeda argues that the type of "written notice" referenced in Texas Tax Code § 41.44(c-3) is the same type of "written notice" required under Texas Tax Code § 25.19, which specifies the type of notice the

10

chief appraiser must give property owners when (inter alia) the appraised value of the taxed property increases from the prior year. Texas Tax Code § 25.19(a). Such notice generally must include:

(1) a list of the taxing units in which the property is taxable;

(2) the appraised value of the property in the preceding year;

(3) the taxable value of the property in the preceding year for each taxing unit taxing the property;

(4) the appraised value of the property for the current year, the kind and amount of each exemption and partial exemption, if any, approved for the property for the current year and for the preceding year, and, if an exemption or partial exemption that was approved for the preceding year was canceled or reduced for the current year, the amount of the exemption or partial exemption canceled or reduced;

(5) if the appraised value is greater than it was in the preceding year, the amount of tax that would be imposed on the property on the basis of the tax rate for the preceding year;

(6) in italic typeface, the following statement: "The Texas Legislature does not set the amount of your local taxes. Your property tax burden is decided by your locally elected officials, and all inquiries concerning your taxes should be directed to those officials";

(7) a detailed explanation of the time and procedure for protesting the value;

(8) the date and place the appraisal review board will begin hearing protests; and

(9) a brief explanation that the governing body of each taxing unit decides whether or not taxes on the property will increase and the appraisal district only determines the value of the property.

Texas Tax Code § 25.19(b).

However, nothing on the face of Texas Tax Code § 41.44(c-3) or in the context in which it uses the term "written notice" supports CM Reed Almeda's assertion that the two Texas Tax Code

11

statutes require the same type of notice. To the contrary, Texas Tax Code § 41.44(c-3) was drafted to address a specific, narrow due process defect in the prior version of the Texas Tax Code that sometimes left some property owners without any remedy when the property owner received no notice of the taxes assessed before they became delinquent. See Heritage Operating, L.P., 496 S.W.3d at 325 (citing Indus. Commc'ns, Inc. v. Ward Cty. Appraisal Dist., 296 S.W.3d 707, 715–17 (Tex. Ct. App. 2009)). Under Texas law, "due process is satisfied if the taxpayer is given an opportunity to be heard before some assessment board at some stage of the proceedings." Denton Cent. Appraisal Dist., 115 S.W.3d at 266. Because this due process standard sets a relatively low bar for notice requirement purposes, we are not persuaded that the detailed notice requirements of Texas Tax Code § 25.19(b) apply to the notice requirement set forth in Texas Tax Code § 41.44(c-3). Cf. Rio Valley, LLC v. City of El Paso, 441 S.W.3d 482, 492 (Tex. Ct. App. 2014) (citation served in delinquent tax suit was sufficient to constitute "written notice of the taxes" within the meaning of Texas Tax Code § 41.44(c-3)).

Harris County's proofs of claim gave CM Reed Almeda notice of the taxes assessed for each of the tax years between 2007 and 2014. With respect to tax years 2007 through 2013, Harris County's proof of claim no. 1-1 gave CM Reed Almeda notice of the taxes nearly two years before CM Reed Almeda filed its § 505 motion. As for the 2014 taxes, Harris County's proof of claim no. 3-1 gave CM Reed Almeda notice of the taxes roughly 150 days before CM Reed Almeda filed its § 505 motion.

We need not decide precisely what type of notice is

12

sufficient in every instance to satisfy the due process concerns underlying Texas Tax Code § 41.44(c-3)'s 125-day window. It suffices to say here that Harris County's proofs of claim were sufficient to trigger this 125-day notice period, which expired before CM Reed Almeda filed its § 505 motion.

Therefore, the bankruptcy court correctly held that CM Reed Almeda's notice-based tax protest for taxes assessed in 2014 and before was untimely and correctly concluded that it had no authority under § 505 to determine CM Reed Almeda's tax liability for those tax years.

**B. Abstention Issue**

For the 2015 and 2016 tax years, the delinquency date for payment of taxes had not yet occurred, so the period for protesting 2015 and 2016 taxes had not yet closed at the time CM Reed Almeda filed its § 505 motion. Thus, relief under § 505 was not time barred for the 2015 and 2016 tax years. However, the bankruptcy court relied upon the discretionary abstention doctrine to determine that it would abstain from determining CM Reed Almeda's tax liability for the 2015 and 2016 tax years.

The bankruptcy court applied two different discretionary abstention tests and held that, under either test, discretionary abstention was appropriate. The first test has been used outside the Ninth Circuit specifically to resolve the question of whether the bankruptcy court should exercise its discretion under § 505 to determine the debtor's tax liability.[6] The second test –

_____

[6]As articulated by the bankruptcy court the factors in the first test are:

(continued...)

13

enunciated in <u>Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)</u>, 912 F.2d 1162, 1167 (9th Cir. 1990) – is used in the Ninth Circuit and elsewhere to resolve discretionary abstention questions arising under § 1334(c)(1). Neither party on appeal disputes the correctness of applying the <u>Tucson Estates</u> test in determining whether a bankruptcy court should hear and decide a § 505 motion. Furthermore, virtually all of the factors in the first test are subsumed within the <u>Tucson Estates</u> test. Therefore, we will assume without deciding that application of the <u>Tucson Estates</u> test is the correct means for determining whether a bankruptcy court should abstain from hearing and deciding a motion under § 505.

The <u>Tucson Estates</u> test sets forth the following factors for consideration:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the

[6](...continued)
(1) the complexity of the tax issues to be decided;

(2) the need to administer the bankruptcy case in an orderly and efficient manner;

(3) the burden on the bankruptcy court's docket;

(4) the length of time required for trial and decision;

(5) the asset and liability structure of the debtor; and

(6) the prejudice to the taxing authority.

Mem Dec. (May 31, 206) at 15:16-16:4 (citing <u>IRS v. Luongo (In re Luongo)</u>, 259 F.3d 323, 330 (5th Cir. 2001)).

14

presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

In re Tucson Estates, 912 F.2d at 1167 (citing In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)).

### 1. Tucson Estates Factors 1 & 6 – Effect of Abstention on Case Administration and Relationship Between Main Bankruptcy Case and Proceeding in Question

The bankruptcy court opined that abstention would not negatively impact administration of CM Reed Almeda's bankruptcy case. At the time of the bankruptcy court's decision, administration of CM Reed Almeda's single-asset bankruptcy estate hinged on a sale of the land, and no sale had yet been consummated. More importantly, the court noted that the debtor "has always contemplated" a liquidating plan to resolve its chapter 11 case and that "the debtor has no general unsecured creditors" who would be inconvenienced by any delay in distribution of any future sale proceeds pending resolution of the parties' surviving tax disputes. The court also found telling the fact that CM Reed Almeda had made no effort to seek any determination of any of its tax liability until roughly two years after the bankruptcy case was commenced and Harris County filed its proof of claim covering tax years 2007 through 2013.

15

On appeal, CM Reed Almeda essentially contends that the estate's inability to pay any creditors until the tax dispute with Harris County is resolved is sufficient impact on administration of the estate, and a sufficient relationship to the main case, to militate against abstention. But CM Reed Almeda: (1) did not challenge any of the facts the bankruptcy court relied upon in assessing the relationship and impact factors; (2) did not challenge any of the inferences the bankruptcy court drew from those facts; and (3) did not challenge the court's application of those facts in weighing the first and sixth Tucson Estates factors. Simply put, CM Reed Almeda has not demonstrated that the bankruptcy court's application of the correct legal standard "was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." Hinkson, 585 F.3d at 1262–63. Nor is any such misapplication evident to us.

### 2. Tucson Estates Factors 2 & 3 – The Predominance of State Law Issues and their Complexity or Difficulty

As the bankruptcy court put it, "the [§] 505 motion involves only state law issues," and "[r]esolution of those issues is more complex than asserted by the debtor." The bankruptcy court explained that contesting the assessed value of the land and determining the extent to which anticipated remediation costs could be taken into account would be governed by state law and that the parties appeared to disagree regarding these issues given the positions they asserted in their moving and opposition papers.

On appeal, CM Reed Almeda posits that the legal issues the

16

bankruptcy court expressed concern over were not really in dispute. Instead, it contended that the parties' dispute focused exclusively on a factual issue: the prospective costs of remediation. CM Reed Almeda has not explained why the bankruptcy court's perception of the anticipated litigation was incorrect or even why its own perception might be more correct than the bankruptcy court's on this issue. Put another way, CM Reed Almeda has not demonstrated that the bankruptcy court's assessment of Tucson Estates Factors 2 & 3 was illogical, implausible, or without support in the record.

### 3.    Tucson Estates Factor 4 – Pending Related Proceeding Before a State Court or Tribunal

The bankruptcy court conceded that there was no state proceeding pending to address CM Reed Almeda's disputed tax liability, but the court gave this factor little weight. For the tax years 2015 and 2016, the bankruptcy court pointed out that CM Reed Almeda could avail itself in Texas of the procedures and grounds for contesting Harris County's tax assessments permitted under Texas law and that there was no legitimate need to substitute a Nevada bankruptcy court for the Texas tribunals available to address the disputed tax liability.

Citing Security Farms v. Int'l Bhd. of Teamsters, 124 F.3d 999, 1009 (9th Cir. 1997), CM Reed Almeda argues on appeal that the absence of a pending state proceeding is fatal to the bankruptcy court's discretionary abstention ruling. But CM Reed Almeda's reliance on Security Farms is misplaced. The absence of a pending state proceeding is not dispositive here. If we were to hold to the contrary – that the absence of a pending state

17

proceeding is dispositive – our holding would be in conflict with In re Tucson Estates, 912 F.2d at 1167, and Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1075-76 (9th Cir. 1991). Both Tucson Estates and Eastport Assocs. identified "the presence of a related proceeding commenced in state court or other nonbankruptcy court" as one of a dozen factors to weigh in deciding whether to apply discretionary abstention. If the presence of a state court proceeding was a mandatory requirement, both Tucson Estates and Eastport Assocs. would have specified that the presence of a state proceeding was an absolute prerequisite, rather than merely identifying it as one of twelve factors the bankruptcy court needed to consider and weigh.

Our analysis is supported by Schulman v. California (In re Lazar), 237 F.3d 967, 981-82 (9th Cir. 2001). Lazar, like Security Farms, involved an action removed from state court to the bankruptcy court. Lazar followed Security Farms and generally held that, as a consequence of the removal, no state court action thereafter existed, so both 28 U.S.C. § 1334(c)(1) permissive abstention and 28 U.S.C. § 1334(c)(2) mandatory abstention were unavailable. Lazar, 237 F.3d at 981-82.

In a footnote, Lazar acknowledged Eastport Assocs. and pointed out that Eastport Assocs. applied the Tucson Estates twelve-factor test for determining the propriety of permissive abstention even though no state proceeding had been commenced. Lazar, 237 F.3d at 982 n.17. Instead of treating Security Farms and Eastport Assocs. as being in conflict, Lazar harmonized the two by effectively limiting its holding (and Security Farms'

18

holding) to actions removed to the bankruptcy court under 28 U.S.C. § 1452(a). Lazar, 237 F.3d at 982 n.17.

Here, Security Farms does not apply because the action in the bankruptcy court was not a removed state court action. Thus, we reject CM Reed Almeda's argument that the bankruptcy court's grant of discretionary abstention was fatally defective in the absence of a pending state action on the parties' tax dispute.[7]

### 4. Tucson Estates Factor 5 – Alternate Bases For Federal Jurisdiction

The bankruptcy court stated that § 505 was jurisdictional in nature and provided an alternate ground for federal jurisdiction in addition to 28 U.S.C. § 1334(b). See generally Mantz v. Cal. State Bd. of Equalization (In re Mantz), 343 F.3d 1207, 1211 (9th Cir. 2003) (describing § 505 as a jurisdictional grant of authority). Nonetheless, the bankruptcy court concluded that, to the extent the existence of an alternate ground for federal jurisdiction ordinarily might weigh against abstention, this weight was offset by the plain language of § 505, which makes the exercise of jurisdiction under § 505 permissive rather than mandatory.

---

[7]This Panel previously held in In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of Arizona Supreme Court, 307 B.R. at 140, that Security Farms' holding only applied to mandatory abstention requests. It is difficult to reconcile Bankruptcy Petition Preparers with Lazar, which held that both permissive and mandatory abstention doctrines are unavailable in actions removed from state court. Because we hold that Lazar supports the bankruptcy court's application of discretionary abstention, we need not further address here the apparent tension between Lazar and Bankruptcy Petition Preparers.

19

On appeal, CM Reed Almeda completely ignores the bankruptcy court's Tucson Estates Factor 5 analysis and merely states "No other basis for jurisdiction exists." This statement is wholly unsupported and does not meaningfully challenge the bankruptcy court's analysis. Thus, CM Reed Almeda has not demonstrated that the bankruptcy court's assessment of Tucson Estates Factor 5 was illogical, implausible, or without support in the record.

### 5. Tucson Estates Factors 7 & 8 – Substance Rather than Form of "Core" Proceeding and Feasibility of Severing State Law Claims From Core Bankruptcy Matters

The bankruptcy court did not say much about these two factors, except to state that "[t]here are no 'core' bankruptcy matters to be severed." We do not agree with this statement. When, as here, tax liability has been asserted in proofs of claim filed in the bankruptcy case, a § 505 motion seeking a determination of the debtor's tax liability falls within the ambit of 28 U.S.C. § 157(b)(2)(B), which identifies as "core" the allowance or disallowance of claims against the estate. Moreover, the motion "arises under Title 11" because § 505 in essence creates a "cause of action" for the determination of tax liability. 28 U.S.C. § 157(a); see also Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1285 (9th Cir. 2013) ("Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title.").

Nonetheless, even if this tax dispute qualifies as a core proceeding, this does not necessarily mean that these two Tucson Estates factors militate against abstention. To the contrary,

20

the seventh Tucson Estates factor requires us to focus on the **substance** of the "core" proceeding. Here, that substance is a dispute over taxes arising under state law, which dispute could and would arise regardless of the intervening bankruptcy case. And the eighth Tucson Estates factor requires us to focus on the existence of state law claims and the feasibility of severing them "from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court."

According to CM Reed Almeda, the absence of a pending state court action renders it infeasible to sever out the state law tax claims. We disagree. As the bankruptcy court pointed out, Texas has an entire system of tribunals and a comprehensive statutory scheme for resolving disputes concerning ad valorem property taxes assessed under Texas law. CM Reed Almeda has not offered any reason why the Texas tribunals are incapable of effectively and efficiently determining CM Reed Almeda's tax liability for 2015 and 2016. In fact, the only apparent impediment to determining this liability in those tribunals is CM Reed Almeda's failure and refusal to bring its tax dispute before those tribunals.

In short, even though CM Reed Almeda's § 505 motion qualified as a core proceeding, the seventh and eighth Tucson Estates factors still militated in favor of abstention.

### 6. Tucson Estates Factor 9 – Burden on the Bankruptcy Court's Docket

The bankruptcy court did not distinctly articulate the extent of the burden on its docket that would result from its

21

hearing and deciding the § 505 motion. Even so, the bankruptcy court made a number of observations relevant to this factor. The court observed that "an evidentiary hearing would be required if this court were to hear the 505 Motion," and that "[g]iven this court's other commitments, there is no reason to believe that it could hear and determine the issues the debtor has raised more efficiently than the state forum." The court further observed that CM Reed Almeda had offered no explanation why the court should need to "start from scratch" in analyzing Texas law governing the assessment of property taxes and disputes regarding those assessments, "when there is a more efficient tribunal that can determine the valuation issues under applicable state law." In effect, the bankruptcy court's observations amount to a finding that hearing the § 505 motion would constitute an **unnecessary** burden on its docket.

Instead of addressing this burden, CM Reed Almeda on appeal has merely pointed out that bankruptcy courts frequently address valuation disputes and has contended that its tax dispute with Harris County is nothing more than that. CM Reed Almeda's appellate argument completely ignored the bankruptcy court's concerns that the tax dispute is more complex than CM Reed Almeda has acknowledged and that the state tax tribunals are better situated to resolve the dispute more efficiently. Once again, CM Reed Almeda has not demonstrated that the court's assessment of the factor in question was illogical, implausible, or without support in the record.

### 7.   Tucson Estates Factor 10 – Forum Shopping Concerns

The bankruptcy court stated that it had developed a "strong

22

sense" of forum shopping as a result of CM Reed Almeda's conduct, particularly its delay in contesting the disputed tax assessments. In essence, the court reasoned that CM Reed Almeda's lack of notice argument did not credibly explain the extent of the delay; rather, the court inferred from CM Reed Almeda's conduct an intent to delay having to pay the tax liability for as long as possible, which also could explain why CM Reed Almeda was insistent that the bankruptcy court should hear and decide the tax dispute.

On appeal, CM Reed Almeda focuses on a different set of facts and attempts to draw from those facts an inference that Harris County is forum shopping. CM Reed Almeda ignores the facts relied upon by the court and the inference of forum shopping the court drew from those facts. Yet again, CM Reed Almeda has not demonstrated that the court's assessment of this factor was illogical, implausible, or without support in the record.

**8.    Tucson Estates Factors 11 & 12 – Jury Trial Rights and Presence of Non-Debtor Parties**

The bankruptcy court effectively found that these two factors were neutral – that CM Reed Almeda had no jury trial right and that, regardless of whether additional government entities needed to be added to the proceeding as necessary parties, the other Tucson Estates factors justified the court's abstention.

At bottom, CM Reed Almeda has done virtually nothing on appeal to persuade us that the bankruptcy court's application of the Tucson Estates factors "was illogical, implausible, or

23

without support in inferences that may be drawn from the facts in the record." Hinkson, 585 F.3d at 1262-63. Nor is any such misapplication evident to us. Accordingly, the bankruptcy court did not abuse its discretion when it decided to abstain from hearing and deciding the tax dispute with respect to the 2015 and 2016 tax years.

### 9. CM Reed Almeda's Other Abstention-Related Arguments

There are only two other issues we need to address. First, CM Reed Almeda maintains that Harris County forfeited the abstention issue by filing proofs of claim. CM Reed Almeda has not supported this novel argument with any legal authority, nor are we aware of any that would support it. In fact, the notion that the filing of proofs of claim could strip the bankruptcy court of its discretion to abstain from hearing a dispute relating to those claims is wholly inconsistent with Tucson Estates and its progeny.

Second, CM Reed Almeda argues that, if abstention were appropriate with respect to the 2015 and 2016 tax years, it also should have been appropriate for the 2007 through 2014 tax years. This argument is nonsensical and ignores the fact that the bankruptcy court was able to resolve the tax liability dispute regarding the 2007 through 2014 tax years by considering the discrete and relatively straightforward timeliness issue. In contrast, the tax liability dispute regarding the 2015 and 2016 tax years could not so easily be resolved, and this distinction in the complexity of the dispute was sufficient, in the bankruptcy court's eyes, to justify a different result on the abstention issue. We cannot say that the bankruptcy court's

24

justification for treating the 2007 through 2014 tax years differently from the 2015 and 2016 tax years was illogical, implausible or without support in the record.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's order denying CM Reed Almeda's § 505 motion is AFFIRMED.