

FILED

OCT 18 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TEA STATION INVESTMENT, INC.;<br>TEA STATION, INC.; TEA CREATIONS,<br>INC.; TEA CITY, INC.; TEA HUT, INC.;<br>TEA STATION OPERATION, INC.; TEA<br>ISLAND, INC.; TEA PROFESSOR, INC.,<br>Debtors. | BAP No. CC-22-1031-SGT<br><br>Bk. No. 2:20-bk-14175-NB |
| TEA STATION INVESTMENT, INC.;<br>TEA STATION, INC.; TEA CREATIONS,<br>INC.; TEA CITY, INC.; TEA HUT, INC.;<br>TEA STATION OPERATION, INC.; TEA<br>ISLAND, INC.; TEA PROFESSOR, INC.,<br>Appellants,<br>v.<br>BAODI ZHOU,<br>Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Neil W. Bason, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and TAYLOR, Bankruptcy Judges.

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

After years of litigation, chapter 11[1] debtors Tea Station Investment, Inc; Tea Station, Inc; Tea Creations, Inc.; Tea City, Inc., Tea Hut, Inc., Tea Station Operation, Inc.; Tea Island, Inc.; and Tea Professor, Inc. (collectively, "Debtors") defeated creditor Baodi Zhou's efforts to certify a class action within the bankruptcy case seeking over $7,000,000 for wage and hour violations under California's Labor Code. The bankruptcy court disallowed Zhou's class claims because it concluded that she had failed to satisfy the applicable class certification criteria. At the same time, Zhou largely succeeded on her relatively small individual wage and hour claims. The court's final claim objection order allowed Zhou's individual claim against Debtors for $4,674.08 in compensatory damages and $2,865.21 in prejudgment interest. Debtors have not appealed the damages or interest awards. Rather, they have appealed the court's award of $168,766.25 in statutory attorney's fees.

Debtors have not established that the court abused its discretion in granting the attorney's fees. Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

### A.    The parties and the state court lawsuit.

Each of the Debtors owned and operated tea stores in Southern California selling a limited selection of food items and boba tea drinks. One of the Debtors, Tea Station Investment, Inc. ("TSI"), employed Zhou at its store in Alhambra, California as kitchen staff between 2008 and 2015.

In September 2017, Zhou commenced her class action lawsuit in the Los Angeles Superior Court alleging wage and hours violations against TSI. Zhou later added the other Debtors as additional defendants alleging that they were part of an integrated business enterprise. The operative state court complaint was Zhou's third amended complaint. Zhou proposed a plaintiff class consisting of all persons who are or were employed in hourly non-exempt positions within four years of the filing of the complaint through resolution of the lawsuit. The third amended complaint stated causes of action for: (1) failure to pay overtime compensation under Cal. Lab. Code §§ 510 and 1194; (2) failure to pay for all hours worked under Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, and 1198; (3) failure to provide meal periods under Cal. Lab. Code §§ 226.7, 512, and 558; (4) failure to permit rest periods under Cal. Lab. Code §§ 226.7 and 558;

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

(5) failure to maintain accurate and itemized statements of hours worked and wages paid under Cal. Lab. Code §§ 226, 226.3, and 558, and under Wage Order Number 5-2001(7); and (6) unfair business practices under Cal. Bus. & Prof. Code § 17200. With the exception of the unfair business practices cause of action, Zhou alleged the same causes action based on the same misconduct against all of the Debtors.

**B.      Debtors' bankruptcy filings and their joint subchapter V plan.**

Zhou's class certification motion in the state court lawsuit was imminent when Debtors filed their bankruptcy petitions. Though TSI's bankruptcy was initially filed as a chapter 7 case, it voluntarily converted the case to chapter 11 (subchapter V), which was jointly administered with the non-TSI debtors' cases. Debtors filed their joint subchapter V small business plan in November 2020. According to the plan, all of the Debtors had ceased operations in the Spring of 2020 because of the pandemic. The plan contemplated that only TSI would resume operations in December 2020; the other Debtors had terminated, or were in the process of terminating, their leases. Yu Liang Huang signed the joint plan on behalf of the Debtors as their CEO or CFO.

**C.      Zhou's proofs of claim and the claim objection proceedings.**

Zhou timely filed proofs of claim in the Debtors' cases. She filed her claims as proposed class claims and included class allegations similar to those set forth in Zhou's third amended state court complaint. Zhou attached the complaint as an exhibit to each proof of claim along with

numerous other exhibits. Many of these exhibits were intended to show that Debtors were controlled, managed, and operated by Huang and his associates as a single integrated business enterprise. The contents of each proof of claim are substantially the same. They contend that each Debtor owed the putative class members a total of $7,472,819.06 for unpaid wages and other violations of California's Labor Code, costs, and attorney's fees. Each claim also identified $400,000 in priority wage claims under § 507(a)(4), earned within 180 days of the bankruptcy petition.

In March 2021, Debtors objected to Zhou's claims on a variety of grounds and challenged Zhou's suitability as a class representative. They pointed out that she ceased working for any of the Debtors roughly five years before their petition filing and hence had no priority wage claim. They also noted that she had not worked for any Debtor other than TSI and claimed that she lacked standing to bring wage claims against the non-employer debtors which were independently owned and operated. Debtors additionally contended that Zhou could satisfy neither the generic class certification factors nor those applicable specifically to class claims filed in bankruptcy cases.

Debtors also informed the court that after Zhou filed the state court action in 2017, each of the Debtors hired third party payroll processor ADP Payroll and switched to ADP's electronic timekeeping system.

Finally, to the extent the court was inclined to permit Zhou to proceed on behalf of all TSI employees, Debtors asked the court to estimate

her claim for both plan voting and distribution purposes.

After holding a hearing on the claim objection, the bankruptcy court granted in part and continued in part the claim objection proceedings. The court held that Zhou could not represent the Debtors' employees who might hold priority wage claims because her general unsecured claim inherently conflicted with the priority claims. The court observed that the cost and time of full-fledged liquidation of Zhou's claims threatened to exhaust the small amount of funds available for distribution to all creditors. To address these concerns, the court held that Zhou's claims should be "estimated." Finally, the court scheduled supplemental briefing on the issues of: (1) the merits of Zhou's individual claim; (2) her ability to meet all of the factors for class certification as to TSI employees only; and (3) an estimation of the class claim against TSI.

After supplemental briefing and additional oral argument, the court issued a memorandum decision in October 2021 determining that Zhou had failed to satisfy the class certification requirements. The court restated its concerns about the cost and delay inherent in fully litigating Zhou's class claims and exercised its discretion to limit discovery and utilize the claims estimation process under § 502(c) to fix the allowed amount of Zhou's claims.

As to the class certification standards, the court found that Zhou sufficiently met the bankruptcy-specific factors but failed to satisfy the class certification factors of Civil Rule 23. It found that she worked the

night shift and often was the sole cook in the Alhambra store's kitchen. As the court explained, this made Zhou's work experience unique as compared to TSI's other store employees who typically did not work in the kitchen, did not work the night shift, were employed part time and for a very short duration, and did not work by themselves in their respective duties. The court also found significant Zhou's lack of personal knowledge of how other, non-kitchen employees of TSI were treated in terms of taking breaks. And the court was troubled by Zhou's failure to explain the methodology behind the allegedly random sampling of TSI's pay records she relied on in support of her assertion that the wage and hour violations she experienced were representative of other employees. The court concluded that any number of explanations could account for Zhou's statistical findings other than wage and hours violations. Based largely on these same facts, the court concluded that Zhou failed to establish typicality, commonality, numerosity, or adequacy of representation.

Based on its Memorandum Decision, the court entered an order on November 16, 2021, disallowing Zhou's priority wage claims asserted against all Debtors. The court also disallowed her class claims against all Debtors and set supplemental briefing and a continued hearing on Zhou's individual claims.

D. **Determination of Zhou's individual claims and her attorney's fees.**

In her supplemental brief, Zhou calculated the value of TSI's wage and hour violations based on her analysis of TSI's time and pay records for

Zhou between September 7, 2013 (the extent of the four-year limitations period) and September 26, 2015 (the date Zhou ceased working for TSI). She calculated $6,232.10 in damages, $3,820.28 in prejudgment interest, and requested $15,125.12 in costs. Most importantly for our purposes, Zhou sought $670,065.00 in attorney's fees incurred in prosecuting the action. According to Zhou, she deducted from this amount all time entries "directly attributable to class certification." Zhou further posited that fees granted pursuant to a California fee shifting statute were not required to be strictly proportional to the damages awarded.

Debtors argued that Zhou presented insufficient evidence of wage and hour violations based on ill-founded examples and impermissible extrapolation from those examples. They also specifically challenged Zhou's $670,065.00 fee request. Debtors argued that the fees requested were not proportional and were per se unreasonable at over 100 times the compensatory individual damages sought, citing *Harrington v. Payroll Entertainment Services., Inc.*, 160 Cal. App. 4th 589, 594, as modified on denial of reh'g (Mar. 20, 2008). They also contended that virtually all of Zhou's fees and costs were attributable to her ill-conceived class action attempts and that such fees did not meet the requirements articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Debtors additionally claimed that some of the time entries were incomprehensible or were for non-

compensable administrative services.[3]

Zhou countered in her reply that Debtors' challenges to her claimed wage and hours damages were specious. She noted her uncontroverted declaration testimony that she was unable to take uninterrupted meal breaks. She also pointed to the time and pay records of other employees showing that Debtors never paid a single meal period or rest period premium. As for the attorney's fees, she claimed that California did not impose a proportionality requirement in determining the reasonable amount of fees to award under prevailing party fee shifting statutes. She also posited that California courts generally defer to the reasonable judgment of the prevailing party's counsel in determining whether the fees sought were necessary to prevail. Finally, she pointed out that none of the fee cases Debtors relied on were analogous to her situation.

Prior to the hearing held on November 30, 2021, the court issued a tentative ruling prospectively awarding $4,674.08 in compensatory damages to Zhou.[4] The court reasoned that both sides presented some evidence to support their positions but that the evidence presented by Debtors in response to Zhou's prima facie evidence was only sufficient to

---

[3] Debtors also disputed the hourly rates charged by Zhou's counsel but have not pressed this issue on appeal. Because it does not affect the matters before us, we do not discuss it further.

[4] The tentative ruling is available on the bankruptcy court's website at http://ecf-ciao.cacb.uscourts.gov/kioskPDF/NB_113021.pdf, at pp. 49-52 (last visited Oct. 13, 2022).

justify a slight downward adjustment for purposes of estimating the allowed amount of Zhou's claim. The court therefore reduced the amount of the damages and the interest accrued by 25% to arrive at the $4,674.08 in compensatory damages and $2,865.21 in prejudgment interest.

As for attorney's fees, the court tentatively ruled that it would reduce Zhou's $670,065.00 fee request by two-thirds, and then slightly "round down" to $215,000 to account for several vague time entries. The court recognized that Zhou had purportedly removed all time entries attributable **solely** to the class action claims but held that it needed to substantially reduce entries that were hybrid in nature and related to **both** her class and individual claims. According to the court, Debtors' proportionality argument hinged on the benefit of "hindsight" by focusing on the results achieved rather than the "reasonable range of possible recoveries" given the information available to Zhou and her counsel at the time the fees and costs were incurred. According to the court, Debtors had failed to establish that the amount of fees it proposed to award was excessive in light of the contemporaneous measure of fees reasonably incurred.

At the November 30, 2021 hearing, Zhou expressed her willingness to submit on the tentative. But Debtors were not satisfied. Debtors' special litigation counsel explained that they had inadvertently neglected to attach to their supplemental brief a chart analyzing Zhou's counsel's time entries and color coding those entries based on grounds for disallowance of those

fees. Debtors further challenged the court's tentative ruling giving Zhou any amount for the hybrid time entries. According to Debtors, the court could not award fees for any work related to her class claims even if that work overlapped with that necessary for her individual claims. Debtors insisted that any such award would be improper because she had not prevailed on class certification.

The court observed that if there was going to be any effective relief for wage and hour claimants carried out through attorney representation, class claims (and a reasonable investigation into such claims) must play a prominent role because otherwise attorney representation would be cost prohibitive in most instances. The court also explained that it was not always possible to unscramble the hybrid services rendered for both class and individual claims. For these reasons, the court posited that it might be reasonable to pay some amount on account of hybrid fees incurred. Notwithstanding this observation, the court asked Debtors to submit their missing chart breaking down the attorney's fees sought by Zhou's counsel and asked Zhou to submit additional information on her counsel's hourly rates.

The parties filed the additional material, and the court permitted further briefing on Debtors' color-coded chart and fee analysis. In her response, Zhou insisted that she already had reduced her fee request to exclude fees pertaining solely to the class claims. She contended that nearly all of the remaining fees ($666,240) were hybrid. According to her, much of

the work reflected in these time entries was inextricably intertwined with her individual claims. In essence, Zhou disputed Debtors' characterization of the fees, relying on the time entries to speak for themselves.

In their supplemental reply, Debtors offered a detailed discussion of California case law, focusing on *Chavez v. City of Los Angeles*, 47 Cal. 4th 970 (2010). They advocated for the first time that the court had discretion to completely deny fees by applying Cal. Civ. Proc. Code § 1033(a). Debtors then conceded that the court properly expressed concern that the denial of fees cannot be based on a hindsight analysis of the merits of their underlying class claims. But they disputed the court's ability to award fees in excess of $200,000 when the potential recovery on her individual claims—the only claims on which she prevailed—never reasonably exceeded $6,232.10.

Debtors also challenged Zhou's assertions that she needed to spend $666,000 on her individual claim as "simply untrue and patently unreasonable." As for the time entries coded as tasks exclusively related to the class action or hybrid, Debtors pointed out that the bulk of these entries pertained to work on discovery, demurrers, or the bankruptcy case. Debtors reiterated that only the non-employer parties filed demurrers, so that work obviously pertained only to the class claims. As for the discovery, Debtors insisted that Zhou failed to offer any concrete explanation why her individual claims hinged on either employee handbooks or what the president of TSI had to say, when he did not

12

exercise direct supervision or control over her. Finally, with respect to bankruptcy matters, Debtors argued that nothing under California law authorized the court to award fees for time Zhou spent either preparing her proofs of claim or defending against Debtors' claim objections.

After holding another hearing, the court entered its final order on Zhou's individual claims. The court allowed those claims jointly and severally against all of the Debtors in the amount of $4,674.08 in compensatory damages and $2,865.21 in prejudgment interest. But the court further reduced its fee award from $215,000 to $168,766.25. This reduction was the result of the court's decision to estimate the amount of allowable fees at 25% of the amount requested as opposed to its prior tentative decision to allow those fees at 33% of the amount requested. The court also awarded $7,562.56 in costs, representing 50% of the costs requested.

The court explained its reasoning at length. It determined that many factual and legal issues arising in the parties' litigation concerned both Zhou's individual claims and her class claims. According to the court, these included TSI's written employment policies, its policies in practice, and its relationship with its affiliates. The court acknowledged the possibility that the affiliates could have been alter egos, not just for purposes of collection "but also for purposes of establishing wage trimming or other issues through evidence of common practice or common control . . . ." The court then ruled that Zhou's individual wage claims for which fees are

13

statutorily available were "closely intertwined factually and legally" with her putative class claims. The court specified that this was true as to the discovery and litigation directed against the affiliates as well as TSI. The court further opined that evidence discovered from TSI's affiliates was relevant to Zhou's attempts to obtain "corroborative evidence" to support her efforts to pin down TSI's employment policies and practices.

The court stated that it had carefully reviewed the parties' arguments regarding Debtors' color-coded analysis of Zhou's counsel's time entries. It determined that the entries coded as unintelligible or related to non-compensable services should be substantially disallowed. As for entries related to bankruptcy matters, the bankruptcy court rejected Debtors' claim that fees on these matters were not permitted by the applicable fee shifting statute. The court similarly rejected Debtors' argument that all fees related to litigation with and discovery from the affiliates should be disallowed. Though the court recognized that Zhou's fee request needed to be substantially reduced to account for Zhou's very limited level of success, it held that there was no per se ban on fees concerning the litigation and discovery regarding the class claims so long as the subject fees pertained to legal or factual issues closely intertwined with the individual claims on which Zhou prevailed. On the other hand, the court agreed with Debtors that fees incurred defending against the affiliates' demurrers should be denied.

The court declined to engage in an entry-by-entry analysis of the fees

sought and their relationship to Zhou's individual claims and the class claims. It remained concerned that the nature and manner of the litigation, and the continuing interests of the estate in conserving very limited resources, weighed heavily against requiring such an exercise. It concluded that it had sufficient factual and legal development to estimate the allowable amount of fees—as it already had done in estimating compensatory damages.

Finally, the court recognized that there was an "inherent tension" in determining the reasonable amount of fees incurred when both the class claims and the individual claims were at issue and when Zhou only prevailed on her individual claims for a very modest amount. On the one hand, the court acknowledged that in the broadest sense, it would not be "reasonable" to spend a large amount of fees on very small individual claims. On the other hand, the court again pointed to the "largely intertwined" nature of Zhou's individual and class claims, and the public policies that encourage litigants to bring meritorious actions to vindicate individual rights. After considering this tension, the court concluded that it would be inappropriate based on "20/20 hindsight" to limit fees based strictly on proportionality to the results Zhou achieved.

The court entered its final order on February 15, 2022, and Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and

15

157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it awarded Zhou $168,766.25 in statutory attorney's fees.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's fee award. *See Hensley*, 461 U.S. at 436-37. The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

"[T]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims . . . ." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007); *see also Klein v. City of Laguna Beach*, 810 F.3d 693, 702 (9th Cir. 2016) (holding that under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), "federal courts apply state law for attorneys' fees to state claims"). The bankruptcy court relied on Cal. Lab. Code § 1194(a)[5] in its decision granting fees. This fee shifting statute gives the court discretion to

---

[5] Cal. Lab. Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

16

award fees to a prevailing plaintiff based on certain types of employee wage claims. *See Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1251 (2012).

Debtors have not disputed on appeal the applicability of Cal. Lab. Code § 1194(a) to Zhou's wage claims. Nor have Debtors argued that Zhou did not "prevail" within the meaning of these statutes. *See generally Hensley*, 461 U.S. at 433 (stating that plaintiffs may be awarded fees as the "prevailing party" when "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit").[6] Instead, they contend that the bankruptcy court did not correctly determine the amount of fees to award to Zhou. According to Debtors, the court misapplied the standards for granting fees set forth in *Hensley*.

*Hensley* is widely recognized as the seminal case in this area of law. *See, e.g., Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012); *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006). Moreover, California courts typically apply *Hensley* to determine whether and to what extent a prevailing party is entitled to fees under a fee shifting statue. *See, e.g., Vines v. O'Reilly Auto Enters., LLC,* 74 Cal. App. 5th 174, 182-83 (2022) (fees sought under former Cal. Gov. Code § 12965(b) (now (c)(6)) for employment discrimination, harassment, and retaliation claims); *Gunther v.*

---

[6] *See also Sharif v. Mehusa, Inc.,* 241 Cal. App. 4th 185, 192 (2015) (holding that when the California legislature does not define in a fee shifting statute what it means to be the "prevailing party," that determination is subject to the trial court's discretion).

*Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 356, 360-61 (2021) (fees sought under Cal. Lab. Code §§ 226(h) and 2699(g)(1) for claims based on unpaid wages and inadequate wage statements); *Espejo v. Copley Press, Inc.*, 13 Cal. App. 5th 329, 382 (2017) (fees sought under Cal. Civ. Proc. Code § 1021.5 in class action to determine status of plaintiffs as employees or independent contractors).

*Hensley* sets forth the standards for determining attorney's fees under a prevailing party fee shifting statute when plaintiffs achieve only limited success on the merits of their claims.[7] *Hensley* instructed trial courts to consider at a minimum three factors in order assess the correct amount of fees to award when the plaintiff's success is limited: (1) the "lodestar" amount; (2) the relatedness (if any) between the successful claims and the failed claims; and (3) the extent of the party's success vis a vis the amount of fees expended. 461 U.S. at 433-37.

As *Hensley* more specifically put it, the trial court ordinarily should first determine the "lodestar" amount: the sum of the hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 433-34. Then the court needs to adjust the lodestar amount to exclude fees incurred on issues unrelated to the plaintiffs' successful claims. *Id.* at 434-35. Even when all claims are related, the court still must compare the amount of fees

---

[7] The fee shifting provision at issue in *Hensley* was 42 U.S.C. § 1988(b), which sets forth in relevant part that in applicable civil rights actions, the court has the discretion to award the "prevailing party" a reasonable attorney's fee.

reasonably expended to the overall results obtained and make further reductions to the lodestar amount to the extent the court concludes that plaintiffs' limited success in the litigation cannot justifiably or equitably support a larger fee award. *Id.* at 433-35. But *Hensley* emphasized that in applying these standards, the trial court enjoyed broad discretion and that there was no precise rule or formula for their consideration. *Id.* at 436-37. Even though *Hensley* declined to articulate a precise rule or formula for determining the relatedness of claims, it observed that related claims "will involve a common core of facts or will be based on related legal theories." *Id.* at 435.

On appeal, Debtors challenge application of the second and third *Hensley* factors. They argue that no fees can be awarded to Zhou for work on the class claims because they are unrelated to the individual claims on which she prevailed. Additionally, they contend that even if some fees are related to both the individual and class claims, her small recovery on the individual claims cannot support the amount of attorney's fees awarded.

## A. The bankruptcy court did not abuse its discretion by determining that Zhou's class claims and individual claims were related.

Debtors contend that Zhou cannot recover fees for any work pertaining to her class claims because she did not prevail on those claims, and they are unrelated to her individual claims. In support of this argument, they cite to *Chavez v. City of Los Angeles* 47 Cal. 4th 970 (2010). In *Chavez*, the plaintiff police officer brought a series of unsuccessful state,

19

federal, and administrative actions alleging among other things nuisance, trespass, inverse condemnation, invasion of privacy, federal civil rights violations, and employment discrimination, harassment, and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"). *Id.* at 977-80, 990. After years of litigation, the police officer succeeded only on his FEHA retaliation claim—and was awarded only $1,500 for economic damages and $10,000 for emotional distress. *Id.* at 975-76. The police officer's counsel then requested a fee award of $436,602.75 under Cal. Gov't Code § 12965(b) (now § 12965(c)(6)).[8] She later amended her fee request to add a "2x" multiplier to her "lodestar" calculation to increase her fee request to $870,935.50. *Id.* at 981. The trial court denied the fee request in its totality based on its reading of Cal. Civ. Proc. Code § 1033(a), which applies where a prevailing party recovers a judgment for less than the $25,000 that could have been recovered in a limited civil case but was not.[9] *Id.*

Looking to federal civil rights law for guidance, the California Supreme Court acknowledged that a FEHA plaintiff ordinarily should recover his or her fees unless "special circumstances" justify denial. 47 Cal. 4th at 985-86. *Chavez* held that Cal. Civ. Proc. Code § 1033(a) qualified as

---

[8] Cal. Gov't Code § 12965(c)(6) provides: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs . . . ."

[9] Cal. Civ. Proc. Code § 1033(a) provides: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case."

such a special circumstance. *Id.* Importantly, however, *Chavez* also cautioned that in exercising the discretion to deny fees under Cal. Civ. Proc. Code § 1033(a), trial courts must avoid hindsight assessments and instead need to "evaluate the entire case in light of the information that was known, or should have been known, by the plaintiff's attorney when the action was initially filed and as it developed thereafter." *Id.* at 986. As *Chavez* elaborated:

> if . . . the trial court is firmly persuaded that the plaintiff's attorney had **no reasonable basis to anticipate** a FEHA damages award in excess of the amount recoverable in a limited civil case, and also that the action could have been fairly and effectively litigated as a limited civil case, the trial court **may** deny, in whole or in part, the plaintiff's claim for attorney fees and other litigation costs.

*Id.* at 987 (emphasis added).

*Chavez* ultimately concluded that the trial court properly exercised its discretion to deny all fees. According to *Chavez*, the trial court's exercise of its discretion was supported by its implicit determination that plaintiff's attorney should have realized well before trial that the matter could effectively have been tried as a limited civil case and that plaintiff's injury was far too slight to justify damages in excess of the $25,000 jurisdictional limit for limited civil cases. *Id*. at 991.

*Chavez* also remarked, citing *Hensley*, that the trial court's denial of fees for the plaintiff's unsuccessful claims additionally was justified because those claims were not sufficiently related to his sole successful

21

claim. As *Chavez* put it, "[b]ecause [plaintiff's] single successful claim apparently was not closely related to or factually intertwined with plaintiff's many unsuccessful claims, the trial court reasonably could and presumably did conclude that plaintiff was not entitled to attorney fees for time spent litigating those unsuccessful claims." *Id*. at 990.

It is this comment from *Chavez* on which Debtors primarily focus. In their appellate reply brief, they pressed this point by citing cases where trial courts determined that a plaintiff's unsuccessful class action claims were not sufficiently related to their successful individual claims to satisfy *Hensley*'s relatedness prong. *See, e.g., Munger v. First Nat'l Collection Bureau, Inc.*, Case No. 15-11276, 2016 WL 3964813, at *4 (E.D. Mich. July 25, 2016); *Cooper v. Sunshine Recoveries, Inc.*, Case No. 00CIV8898LTSJCF, 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001).

None of these cases justify reversal. *Chavez*, *Munger*, and *Cooper* all stand for the basic proposition that a trial court **may** exercise its broad discretion to determine that the successful claims and the failed claims are unrelated. Where such a finding is made, and supported by the record, *Hensley* requires denial of a fee award because they arose from failed claims unrelated to the successful claims. But this does not mean that it was an abuse of discretion for the bankruptcy court here to reach the opposite conclusion. *See Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004) (en banc) (observing that had the district court decided to exercise its discretion to reach the opposite conclusion, "we would be hard pressed to find any

22

rationale requiring us to reverse.").

A trial court does not abuse its discretion unless it applies an incorrect legal rule or its factual findings are clearly erroneous. *TrafficSchool.com*, 653 F.3d at 832. Debtors' opening brief does nothing to explain how the bankruptcy court's determination that Zhou's individual claims and class claims were intertwined was based on an incorrect conclusion of law or a clearly erroneous factual finding. As Debtors themselves have pointed out, it is not our role on appeal to search for error unaided by arguments that specifically and distinctly raise the pertinent issues. *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

Even if we were to conclude that Debtors sufficiently challenged the court's determination that Zhou's individual and class claims were closely intertwined, we perceive no basis for concluding that the court abused its discretion. The record reflects that the bankruptcy court carefully considered the individual and class claims and found considerable overlap. It further found that the fees awarded for such overlapping work were reasonable and necessary at the time counsel performed the services. Addressing the time entries Debtors challenged in their color-coded chart, the court additionally found that Zhou's discovery and litigation activities could not readily be parsed between her individual and class claims. These findings were sufficient to support the bankruptcy court's determination that the relatedness prong of *Hensley* was satisfied.

23

Debtors argue that the fact the class claims involved different employer entities and different employees than Zhou's individual claims somehow undermined the apparent relatedness of the claims. But the bankruptcy court persuasively explained how the affiliates' employment policies and practices were relevant as potential corroborative evidence to Zhou's individual claims. It also explained that **at the time the fees were incurred**, the common ownership and control of TSI and its affiliates was a viable and legitimate issue relevant to both her individual and her class claims.

Effectively, Debtors are seeking a per se rule that class claims and individual claims are never sufficiently related for purposes of *Hensley*'s relatedness requirement when class certification is denied. In light of the broad discretion *Hensley* afforded to trial courts and its decision to refrain from setting concrete rules for determining relatedness, we are unpersuaded that any per se rule is appropriate. Because Debtors have not demonstrated that the bankruptcy court's relatedness determination was based on either an error of law or clearly erroneous factual findings, Debtors' argument challenging the court's relatedness determination necessarily fails.

B.   **The bankruptcy court did not abuse its discretion by awarding $168,766.25 in fees after comparing the fees Zhou incurred to the relief she obtained.**

Debtors next argue that the bankruptcy court abused its discretion

based on the final *Hensley* prong. According to Debtors, the bankruptcy court's fee award was disproportionately large compared to the relief Zhou obtained. Debtors point out that Zhou's individual and class claims combined sought recovery of $7,800,000 but Zhou only recovered $4,674.08, or .006% of the damages sought. Likewise, Debtors note that Zhou sought to represent herself and 1399 other class members but only succeeded in representing herself. Debtors maintain that the 25% of the fees the bankruptcy court awarded to Zhou was disproportionate to her success and thus constituted reversible error.

But California law generally rejects a strictly proportional approach in awarding fees based on prevailing party fee shifting statues. *See, e.g.,* *Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 37-39 (2018); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 164 (2006). This proposition was aptly followed in *Heyen v. Safeway Inc.*, Case No. B243610, 2014 WL 2154676 (Cal. Ct. App. May 23, 2014) (unpublished).[10] In *Heyen,* after nearly ten years of wage and hour litigation, unsuccessfully brought as a class action, the plaintiff only recovered individual damages of $26,000. She then sought to recover fees of $1,512,794.50. The trial court granted her fee

---

[10] California courts are prohibited from citing unpublished Court of Appeal decisions. *See* Cal. R. Ct. 8.1115. That prohibition does not apply to federal courts to the extent an unpublished decision indicates how California courts might address a particular issue. *See Magadia v. Wal-Mart Assocs.,* 999 F.3d 668, 681 n.12 (9th Cir. 2021); *Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1167 n.6 (9th Cir. 2011); *but see United States v. Martinez-Lopez,* 864 F.3d 1034, 1042 (9th Cir. 2017) (en banc) (declining to rely on certain unpublished California Court of Appeal decisions under the circumstances of that case).

request in part, awarding her $603,150. Both plaintiff and defendants filed cross-appeals *Id.* at *1. The Court of Appeal affirmed, holding that the amount of the fee award was, "within the sound discretion of the trial court, which is the best judge of the value of professional services rendered." *Id.*

The *Heyen* court specifically rejected the theory that the $603,150 fee award was impermissible because it was disproportionate to the results plaintiff achieved. As the *Heyen* court explained: "[a]lthough the court may consider the amount at issue in the litigation, as well as counsel's relative success in achieving the client's litigation objectives in adjusting the lodestar figure, **the attorney fee award need not bear any specific relationship to the dollar amount of the recovery**." *Id.* at *5 (emphasis added) (quoting *Concepcion v. Amscan Holdings*, 223 Cal. App. 4th 1309, 1321 (2014)); *see also Harman v. City and Cnty. of San Francisco,* 158 Cal. App. 4th 407, 419–421 (2007) (similarly rejecting proportionality requirement in the context of a civil rights action).

In support of their proportionality argument Debtors again cite to *Hensley*, but also to *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009). Following *Hensley*, *McCown* emphasized the importance of the trial court considering the degree of plaintiff's success before granting a federal civil rights plaintiff's fee request under 42 U.S.C. § 1988. *Id.* at 1103. But *McCown* also specifically eschewed a strict formulaic or proportional approach to determining the fees of a plaintiff who achieves only limited success. *Id.* at

26

1104 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)). Furthermore, *McCown* is not particularly apposite. It primarily held that the district court provided insufficient lodestar calculations and explanations to support a fee award of $200,000, which reduced the fees plaintiff sought by roughly 33% ($301,551.22 requested). *Id.* at 1101. *McCown* also held that the trial court in awarding fees did not adequately consider that the plaintiff only succeeded on one of his nine causes of action and only obtained compensation after settlement of $20,000—less than 10% of the $251,000 he sought in his settlement demands. *Id.* at 1103-05. *McCowan* cited, among other cases, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), another civil rights case. The plaintiffs in *Farrar* sought $17 million from six defendants but only recovered a judgment of $1 from one defendant. The Supreme Court held that when the principal purpose of a civil rights action is to recover damages for individual injury and the plaintiffs are unsuccessful in establishing such injury or are awarded only nominal damages, the trial court typically can dispense with an analysis of the lodestar amount and the *Hensley* factors. In such situation, a court may instead award no fees or greatly reduced fees based on the stark contrast between the amount of damages awarded and the amount of damages sought. *Id*. at 113-15.

McCown* and *Farrar* dealt with fees requested in federal civil rights actions under 42 U.S.C. § 1988. Unlike *Hensley*, which California courts broadly follow, no California decision has followed either *McCown* or *Farrar* outside of the context of fees requested under federal fee shifting

27

statutes, predominantly 42 U.S.C. § 1988.

Citing both *Rivera* and *Farrar*, the California Supreme Court in *Chavez* stated: "[a]lthough attorney fees need not be strictly proportionate to the damages recovered, when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Chavez*, 47 Cal. 4th at 989 (cleaned up). But *Chavez* ultimately relied on other grounds in affirming the trial court's denial of fees. Furthermore, unlike *Farrar*, Zhou established all essential elements to support her individual wage claims and recovered more than nominal damages.

Here, the bankruptcy court explicitly considered the limited extent of Zhou's success and twice reduced the fees requested. Initially, the court stated that it would reduce the fees by 66%. After additional briefing and argument on these very topics, the court ordered that the fees sought be reduced by 75%, from $670,065 to $168,766.25. The bankruptcy court duly considered the results of the litigation but exercised its discretion to award fees of $168,766.25, citing the intertwined nature of the work performed, the reasonableness of the work at the time it was performed, and policy concerns in encouraging the prosecution of meritorious wage claims.[11]

---

[11] Debtors also rely on *Harrington v. Payroll Ent. Servs., Inc.*, 160 Cal. App. 4th 589, *as modified on denial of reh'g* (Mar. 20, 2008). But Debtors' reliance is misplaced. *Harrington* held that of the $46,000 in attorney's fees plaintiff requested, the record could not possibly justify as reasonable a fee award any larger than $500. *Id.* at 594. As *Harrington* explained:

As to the policy concerns, the court concluded that the fee statutes at issue were intended to encourage employees to bring meritorious wage claims when the expense of prosecuting the claims would be economically impracticable in the absence of the fee shifting statutes. The bankruptcy court's public policy concerns are consistent with California law, which provides that Cal. Lab. Code § 1194's overtime provisions "are remedial and are to be construed so as to promote employee protection."[12] *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004). *Sav-On* even more importantly stated that "Labor Code section 1194 confirms a clear public

> It is as plain to us as it was to the trial court that, from the outset, this was a dispute about $44.63 and that it was not viable as a class action. It is equally plain that Harrington was underpaid as the result of an honest mistake made in reliance on a formula provided by his union, not based on any willful or knowingly wrongful conduct by [defendant]. At the risk of understatement, there is no way on earth this case justified the hours purportedly billed by Harrington's lawyers.

*Id.* (citation omitted). *Harrington* is inapposite. The record here contains no such findings, nor have Debtors pointed us to evidence in the record sufficient to support comparable findings.

[12] Debtors informed the bankruptcy court that after Zhou's action, they switched to ADP to process payroll. Zhou has argued that this action is evidence that her lawsuit acted as a catalyst for Debtors' labor reforms and benefitted current employees. She has suggested that this can serve as an independent basis for an award of attorney's fees under Cal. Civ. Proc. Code § 1021.5. This argument was not presented to the bankruptcy court and Debtors object to Zhou raising this theory for the first time on appeal. We do not address the merits of Zhou's catalyst argument but note that Debtor's change to ADP supports the bankruptcy court's policy concerns in favor of its fee award despite the limited amount recovered on Zhou's individual claim.

policy that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers." *Id.* (cleaned up); *see also Cruz v. Fusion Buffet, Inc,* 57 Cal. App. 5th 221, 242 (2020) (stating that § 1194(a)'s fee provision affords a "needed disincentive to violation of minimum wage laws"); *Eicher v. Advanced Bus. Integrators, Inc.,* 151 Cal. App. 4th 1363, 1383 (2007) ("Public policy favors employees in their efforts to recover overtime compensation."); *Jones v. Humanscale Corp.,* 130 Cal. App. 4th 401, 412 (2005) (identifying the full and prompt payment of wages "as a fundamental policy which involves a broad public interest."). Debtors have failed to challenge the bankruptcy court's invocation of policy concerns in any meaningful way, so any challenge that they might have raised has been forfeited. *Christian Legal Soc'y*, 626 F.3d at 485; *Greenwood*, 28 F.3d at 977.

In sum, the bankruptcy court correctly applied the legal standards in determining the amount of attorney fees to be awarded to Zhou's counsel under Cal. Lab. Code § 1194. It was keenly aware of the limited recovery on Zhou's individual claims and the total amount of fees requested. The record amply demonstrates that the court took into consideration Debtors' arguments, including the limited damages awarded, when reducing the fee award. Contrary to Debtors' argument, California law does not support the total denial of fees sought by plaintiffs where fees have any relation to unsuccessful claims. Rather, on this record, the bankruptcy court understandably concluded that there was a subset of hybrid fees relating to

both the successful and unsuccessful claims that was reasonable and necessary when undertaken. It adopted a reasoned decision to reduce these fees on a percentage basis rather than engage in a line-by-line review to apportion the billings between the successful individual claims and the unsuccessful class claims. As established in *Hensley*, and the California cases applying it, courts are afforded considerable discretion to determine appropriate fee awards. The bankruptcy court's reasonable exercise of that discretion is not reversible error.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order granting in part and denying in part Debtors' claim objection.